452 So.2d 45 (1984)
SAFECO TITLE INSURANCE COMPANY, a Foreign Corporation, Appellant,
v.
Charles E. REYNOLDS and Marguerite E. Reynolds, His Wife, Appellees.
No. 83-1517.
District Court of Appeal of Florida, Second District.
May 11, 1984.
Rehearing Denied June 21, 1984.
*46 Stephen D. Hughes, Largo, for appellant.
William H. Walker, St. Petersburg, for appellees.
RYDER, Acting Chief Judge.
Safeco Title Insurance Company (hereinafter Safeco), the insurer and defendant below, appeals the amended final judgment which denied its alternative motions for a new trial or remittitur; confirmed the jury verdict of $50,000.00 in damages as to the breach of title insurance contract claim; and granted the Reynolds, the insureds and plaintiffs below, attorney's fees and costs in the respective amounts of $20,000.00 and $5,854.00. The Reynolds cross-appeal those portions of the same judgment which denied their motion for new trial as to their negligence claim and approved that part of *47 the jury verdict which found negligence but did not award them any damages as to that cause of action.
The only issues which merit extended discussion concern the propriety of the jury's damages awards.[1] Upon examination of the record and the applicable law, we agree the trial court erred in not granting Safeco's motion for remittitur and the Reynolds' motion for a new trial.
In their original complaint, the Reynolds sought to recover damages they allegedly suffered due to Safeco's failure to disclose the existence of a duly recorded easement[2] and reciprocal parking agreement[3] which they alleged had a "substantial negative effect upon the market value" of their property. (Emphasis supplied). In an amended complaint filed by the Reynolds, they added a second count to their action which alleged they had "suffered business and commercial losses, including without limitation, the past, present and future loss of income and diminished the value of plaintiffs' investment, together with general damages" as the proximate result of Safeco's negligence in failing to make the required disclosures.
During the jury trial, the Reynolds' expert statistician testified that seven of the Reynolds' parking spaces were lost as a result of the reciprocal parking agreement, and the Reynolds' expert real estate appraiser testified that the loss of seven parking spaces reduced the market value of the affected property by $24,000.00. Safeco's expert appraiser testified that there was no reduction in the market value of the property because of the reciprocal parking agreement. Additionally, the Reynolds' expert statistician testified, partially relying on the properly admitted net income information testified to by an expert accountant, that Reynolds had suffered a loss of $14,289.00 in profits as a result of the encumbrances and would suffer a future loss, discounted back to its net present value of $43,362.00, for a total income loss of $57,651.00. Safeco presented its own expert accountant who testified to some extent that the Reynolds did not suffer any lost profits as a result of the existence of the encumbrances. Thereafter, as stated previously, the jury found for the Reynolds as to their title insurance policy claim and established "the loss in market value of the plaintiffs' real property caused by the existence of the encumbrances to be in the sum of $50,000.00;" the jury then also found for the Reynolds as to their negligence claim but determined "the plaintiffs' losses and damages to their business legally caused by the defendant's negligence to be in the sum of $0 dollars."
In the appeal, Safeco argues remittitur should have been granted because the measure of damages applicable where an insured owner suffers a loss as a result of encumbrances not disclosed by the title insurer is the difference between the market value of the property without the burden and its market value with the encumbrance, and the evidence presented by the Reynolds as to this amount of damages, even if accepted completely by the jury, only proved at most a $24,000.00 diminution in market value.
It is a well-settled and fundamental rule that "an insured [owner or mortgagee] *48 is entitled to recover the actual loss or damage sustained from a defect, lien or encumbrance affecting his title which was not excepted from the policy's coverage." 1 Fla.Jur.2d Abstracts and Title Insurance § 39 (1977). See generally Annot., 60 A.L.R.2d 972, 975 (1958). There are two basic measurements for determining an insured owner's actual partial loss because of an encumbrance or encroachment not disclosed, with their particular application dependent upon the nature of the undisclosed burden and whether that burden can be removed: (1) diminution in market value (as stated above), and (2) the amount necessary to remove the existing encumbrance.[4]See generally 15A Couch on Insurance 2d § 57:184 (rev. ed. 1983). (Compare cases cited at footnote 4 with cases cited at footnote 5); 60 A.L.R.2d at 975; 46 C.J.S. Insurance § 1402 (1936); 44 Am.Jur.2d Insurance § 1566 (1982). The Reynolds chose to pursue the loss of market value as general damages in their contract action, see Guarantee Abstract & Title Insurance Co. v. St. Paul Fire and Marine Insurance Co., 216 So.2d 255 (Fla. 2d DCA 1968); accordingly, they had the burden of establishing the amount of this particular loss. Florida Homes Insurance Co. v. Braverman, 163 So.2d 512 (Fla. 3d DCA 1964).
Our examination of the record reveals the Reynolds' expert only testified that the property in question was reduced in value $24,000.00 because of the undisclosed reciprocal parking agreement. The jury was not at liberty to tack onto this figure an additional $26,000.00 in market value losses when there is no "evidence in the record which may be pointed out as constituting a reasonable foundation for the conclusion reached." Golden v. Morris, 55 So.2d 714 (Fla. 1951). Moreover, although an insured owner may be able to recover consequential or special damages such as lost profits as damages for breach of a title insurance contract, Couch § 57:175; see generally Twyman v. Roell, 123 Fla. 2, 166 So. 215 (1936); Talisman Sugar Corp. v. Farmland Development Co., 156 So.2d 392 (Fla. 2d DCA 1963), the Reynolds were not entitled to the additional $26,000.00 award as lost profits because they did not plead for such special damages in their breach of title insurance contract claim.[5] Fla.R.Civ.P. 1.120; J. Ray Arnold Lumber Corp. v. Richardson, 105 Fla. 204, 141 So. 133 (1932); Ephrem v. Phillips, 99 So.2d 257 (Fla. 1st DCA 1957), cert. denied, 101 So.2d 816 (Fla. 1958). Accordingly, because it appears from all the evidence presented at trial that the damages awarded by the jury on the first count are "grossly excessive," we grant a remittitur for the amount of the clearly definable excess of $26,000.00 but affirm the jury award for the balance of $24,000.00 E.g., Aylesworth v. London, 119 So.2d 816 (Fla. 2d DCA 1960). See also Renuart Lumber Yards, Inc. v. Levine, 49 So.2d 97 (Fla. 1950).
As to the cross-appeal, the Reynolds argue a new trial should have been granted as to the negligence claim because the jury verdict which found no damages was clearly contrary to the weight of the evidence presented at trial. As an initial point, we note this court has recognized that an insured owner under a title insurance policy may sue his insurer in negligence for failing to advise him, according to the duties set out in the policy, of the existence of a properly recorded encumbrance affecting property covered by the policy. Harvey v. J & H Holdings, Inc., 310 So.2d 371 (Fla. 2d DCA 1975). See generally 60 A.L.R.2d at 1000. Recognition of such a cause of action is consistent with the long-established general principle that injuries caused by the allegedly negligent performance of a contractual duty may be redressed through a tort action. Banfield v. Addington, 104 Fla. 661, 140 So. 893, 896 (1932).
*49 In addition to the recovery of general damages naturally resulting from a breach of the contractual duty, Western Union Telegraph Co. v. Merritt, 55 Fla. 462, 46 So. 1024 (1908); Williams v. Atlantic Coast Line Railroad Co., 56 Fla. 735, 48 So. 209 (1908), a plaintiff may also be able to recover special damages such as lost profits in cases of tort arising from a contractual setting. Florida East Coast Railroad Co. v. Peters, 72 Fla. 311, 73 So. 151 (1916); Krohne v. Orlando Farming Corp., 102 So.2d 399 (Fla. 2d DCA 1958). Damages for torts arising out of contracts are governed by the same rules as in the case of contract actions. Peters. However, it is clear that a plaintiff who proves both a breach of contract and a breach of duty of care (negligence) owed pursuant to the same contract is entitled to only one recovery for each type of damages (general and special) pled and proven. Therefore, although the Reynolds would not be entitled to a second award for loss of market value as a result of Safeco's negligence, they would be entitled to recover lost profits as a result of Safeco's negligence if those specially pled consequential damages were sufficiently proven to the jury. Twyman; Krohne.
With these basic principles in mind, we believe that the Reynolds are entitled to a new trial on damages as to their negligence claim because they presented a substantial amount of evidence with regard to lost profits, and the jury clearly intended for the Reynolds to recover more than $24,000.00 in money damages as evidenced by the jury's awarding of an additional $26,000.00 in damages on the breach of insurance policy contract claim. In any event, a jury of reasonable persons could not have returned the zero verdict. Griffis v. Hill, 230 So.2d 143 (Fla. 1970); Parris v. Gavagan, 271 So.2d 816, 817 (Fla. 2d DCA 1973).
As a final point, we vacate the particular awards of attorney's fees and costs in favor of appellees in view of our holdings herein. However, we do not reverse appellees' entitlement to such fees and costs pursuant to section 627.428(1), Florida Statutes (1981); we merely direct the trial court to re-examine and readdress, after the new trial on damages (negligence verdict) is concluded, the amount of fees and costs to be ultimately awarded to appellees. We note that such awards may include attorney's fees and costs incurred in the original proceeding as well as the proceedings on remand. § 627.428(1).
Accordingly, we affirm the jury's affirmative findings of breach of contract and negligence, instruct the trial court to grant the remittitur on the breach of contract verdict, direct the trial court to hold a new trial as to damages on the negligence verdict and then readdress the awarding of attorney's fees and costs.
AFFIRMED in part and REVERSED in part with directions.
DANAHY and LEHAN, JJ., concur.
NOTES
[1] Safeco does not contend on appeal that it did not fail to disclose the two encumbrances; furthermore, there was substantial competent evidence below to support the jury's findings of breach of contract and negligence. On another point, we find the trial court did not commit error in admitting into evidence the parking survey conducted by Mrs. Reynolds and relied upon by the Reynolds' experts in formulating their opinions. Lee County Electric Cooperative, Inc. v. Lowe, 344 So.2d 308 (Fla. 2d DCA 1977), appeal after remand, 367 So.2d 1114 (Fla. 2d DCA 1979).
[2] The properly recorded agreement between the Reynolds' predecessor in interest and the owners of the adjoining property created a common driveway for the purposes of ingress and egress between their adjoining rear lots wherein each property owner granted to the other an easement in a 12 1/2 foot strip of land along each party's rear boundary.
[3] The reciprocal parking agreement was recorded as an addendum to the original agreement, and in this agreement each party granted to the other, including assignees, "full parking privileges in those premises [rear lots] designated in the original agreement."
[4] A third but not widely-recognized measurement involves making a distinction between rural land and urban land used for commercial purposes by fixing the damages to the latter type of property at the value of urban land subject to the easement plus indemnity for loss of use. See Couch § 57:184; 60 A.L.R.2d at 978. We express no opinion on the propriety of employing this method of determining damages.
[5] Lost profits are considered special damages. Arcade Steam Laundry v. Bass, 159 So.2d 915 (Fla. 2d DCA 1964).