**AFM CORPORATION, a Florida corporation, Plaintiff-Appellee,**

v.

**SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, a New York corporation, Defendant-Appellant.**

No. 85–5714.

United States Court of Appeals, Eleventh Circuit.

Aug. 19, 1986.

Stephen B. Gillman, Shutts & Bowen, Richard M. Leslie, Miami, Fla., for defendant-appellant.

* *See* Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

Christopher Lynch, Miami, Fla., for plaintiff-appellee.

Before RONEY, Circuit Judge, HENDERSON,* Senior Circuit Judge, and ATKINS **, Senior District Judge.

PER CURIAM:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA PURSUANT TO RULE 9.150, FLORIDA RULES OF APPELLATE PROCEDURE.

TO THE HONORABLE JUSTICES OF THE SUPREME COURT OF FLORIDA:

This case comes to the United States Court of Appeals for the Eleventh Circuit on appeal from the United States District Court for the Southern District of Florida.

It appears to the United States Court of Appeals for the Eleventh Circuit that this case involves questions of Florida law determinative of the cause, but which are unanswered by controlling precedent of the Supreme Court of Florida. We, therefore, certify the questions to the Supreme Court of Florida for resolution.

The facts of the case are as follows:

AFM Corporation (AFM) was [1] a Florida corporation specializing in the sale and servicing of copy machines and related business equipment. Prior to August 1, 1980, AFM's business office was located in Hallandale, Florida which is in southern Broward County near the Dade County line. AFM's principal form of advertising was through space purchased in the yellow pages published by Southern Bell Telephone and Telegraph Company (Southern

1. In July, 1981, AFM executives decided to abandon AFM and form a new corporation with a different name that carried on the same business. This decision to change the corporation's name was not in any way caused by the alleged negligence of Southern Bell.

Bell). AFM advertised in the Miami yellow pages because of its business dealings in Dade County.

In March, 1980, AFM and Southern Bell entered into an agreement for the inclusion of AFM's advertisement in the 1980–81 yellow pages. At the time of this contract, AFM executives were considering moving their office from Hallandale, Florida to Hollywood, Florida. They were told by Southern Bell employees that such a move would result in significantly higher toll charges for AFM's Dade County phone number.[2] AFM sought alternatives and Southern Bell advised that a referral call service could be inaugurated whereby callers who phoned AFM's old number would be referred to the new Hollywood number by a taped voice. By employing this method, AFM could avoid using the old phone number and not incur the additional costs. The parties agreed that if AFM moved and changed its phone number, Southern Bell would provide this referral service.

In late July, 1980, AFM moved its office to Hollywood and was given a new phone number by Southern Bell. At that time, Southern Bell set up the referral system so that customers who called AFM's old Dade County number would be told of the new number. In September, 1980, the yellow pages were distributed carrying AFM's advertisement but listing AFM's incorrect old phone number.

On November 21, 1980, Southern Bell mistakenly assigned AFM's old Dade County phone number to a new customer which resulted in the premature disconnection of the referral system. AFM discovered the mistake and notified Southern Bell of the problem. Immediately thereafter, Southern Bell reconnected the old number thereby reinstating the reference. In April, 1981, however, the reference was again disconnected by mistake. This error was not discovered until June, 1981. As soon as Southern Bell was notified of the mis-

take, the reference of calls was reestablished.

AFM filed an action in a Florida state court against Southern Bell alleging both negligence and breach of contract. The case was removed to the United States District Court for the Southern District of Florida on January 11, 1982. At the trial, AFM introduced evidence that Southern Bell had agreed to provide the referral system and that the system had been prematurely disconnected between April and June, 1981.[3] AFM's sole expert evidence of damages was presented by Dr. Frederick Landsea who testified that AFM lost $21,800.00 in lost profits because of Southern Bell's failure to properly maintain the referral calls. At the close of the evidence, AFM's counsel withdrew all of the contract claims and elected to proceed solely in tort. After the jury returned a verdict in favor of AFM for both compensatory and punitive damages, Southern Bell filed a motion for judgment notwithstanding the verdict or in the alternative a motion for a new trial. These motions were denied by the district court on July 29, 1985 and Southern Bell filed a timely appeal.

Southern Bell contends that the jury's award of compensatory damages must be overturned because AFM waived its contract cause of action and therefore could not recover lost profits solely on its tort claim, citing *Greater Coral Springs Realty, Inc. v. Century 21 Real Estate of Southern Florida, Inc.*, 412 So.2d 940 (Fla. 3d DCA 1982) in support thereof. In *Greater Coral Springs Realty, Inc.*, the court stated:

> A party may not recover contract damages in a tort action. Thus, an award of lost profits, the equivalent of the performance of the bargain, was clearly not warranted under the facts of this case since the parties never reached an agreement.

---

**2.** Previously, AFM's Miami customers could call a Dade County number and the call would be automatically transferred to the Hallandale office without incurring long distance charges.

**3.** AFM did not seek damages for the first disconnection of the referral of calls system.

*Id.* at 941. *See also Sprayberry v. Sheffield Auto and Truck Service, Inc.*, 422 So.2d 1073, 1075 (Fla. 1st DCA 1982). Other Florida courts, however, have held or indicated that a plaintiff suing in tort may recover lost profits. *Safeco Title Insurance Co. v. Reynolds*, 452 So.2d 45 (Fla. 2d DCA 1984); *Douglass Fertilizers & Chemical, Inc. v. McClung Landscaping, Inc.*, 459 So.2d 335 (Fla. 5th DCA 1984). We have found no Florida Supreme Court case which resolves this conflict.

There is another conflict in Florida law that might affect the outcome of this case if lost profits are available in tort actions. Southern Bell contends that AFM never established a tort independent of the breach of contract and therefore was not entitled to punitive damages. It is not clear, however, whether a negligent or willful breach of contract can constitute an independent tort under Florida law. *Compare Electronic Security Systems Corp. v. Southern Bell Telephone and Telegraph Co.*, 482 So.2d 518 (Fla. 3d DCA 1986) with *Safeco Title Insurance Co. v. Reynolds*, 452 So.2d 45 (Fla. 2d DCA 1984). Because of these two conflicts, we certify the following questions to the Supreme Court of Florida:

(1) Can a plaintiff suing exclusively in tort recover lost profits?

If the answer to question 1 is yes,

(2) Can negligent or willful breach of a contract alone constitute an independent tort?

If the answer to question 2 is yes,

(3) Can such a tort be the basis of an award of punitive damages if the other criteria for awarding punitive damages are met?

We do not intend the particular phrasing of these questions to limit the Supreme Court of Florida in its consideration of the problems posed by the entire case. In order to assist consideration of the case, the clerk of this court shall transmit the entire record, along with the briefs of the parties, to the Supreme Court of Florida.