**AIRPORT RENT–A–CAR, INC., a Florida corporation, Plaintiff–Appellant,**

v.

**PREVOST CAR, INC., a New Jersey Corporation, Defendant– Appellee.**

No. 93–4015.

United States Court of Appeals, Eleventh Circuit.

April 19, 1994.

Hugh T. Maloney, Gary S. Maisel, Patterson, Maloney & Gardiner, Ft. Lauderdale, FL, for plaintiff-appellant.

Shirley Jean McEachern, Bard D. Rockenbach, Daniel M. Bachi, Sellars, Supran, Cole, Marion & Espy, P.A., W. Palm Beach, FL, for defendant-appellee.

Before KRAVITCH, ANDERSON and EDMONDSON, Circuit Judges.

PER CURIAM:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA PURSUANT TO ARTICLE 5, SECTION 3(b)(6) OF THE FLORIDA CONSTITUTION.

TO THE SUPREME COURT OF FLORIDA AND ITS HONORABLE JUSTICES:

This case comes to the United States Court of Appeals for the Eleventh Circuit on appeal from the Southern District of Florida. It involves questions of Florida law which are determinative of the cause, but unanswered by controlling precedent of the Supreme Court of Florida. We therefore certify this question for resolution by the highest court of Florida.

### I. Facts

The Plaintiff, Airport Rent–A–Car, Inc., ("Rent–A–Car"), brought this action against Defendant, Prevost Car, Inc., ("Prevost"), arising from the destruction of two passenger buses owned by Rent–A–Car and manufactured by Prevost. This appeal concerns the dismissal with prejudice of Rent–A–Car's second amended complaint.

Rent–A–Car owned several buses manufactured by Prevost. Two of the buses caught fire and were destroyed while in transport. According to Rent–A–Car, one of the buses caught fire while transporting school children. Rent–A–Car did not purchase the buses directly from Prevost or from a distributor. Rather, Rent–A–Car purchased the buses from Associated Cab Company, Inc., ("Associated"), who was asserted not to be a supplier or distributor of the buses. Further, Rent–A–Car alleged that Associated was not a merchant within the definition under the Uniform Commercial Code; thus, no express or implied warranty claim against Associated was brought. Instead, Rent–A–Car brought claims against Prevost, the manufacturer and seller of the buses, alleging the buses when sold were defective and unreasonably dangerous.

In its first amended complaint, Rent–A–Car alleged in Counts I and II that Prevost was liable under a strict products liability theory because the bus purchased by Rent–A–Car was defective when it left the manufacturer and that the defect made it unreasonably dangerous. Rent–A–Car claimed damages for the loss in the value of the bus, damage resulting from the loss of use of the bus, and costs of litigation. Counts III and IV asserted Prevost's liability under a negligence theory and included a demand for damages. Counts V and VI were for breach of warranty. Prevost moved to dismiss the complaint.

The district court granted Prevost's motion to dismiss. The district held that the Economic Loss Rule applied, precluding recovery in tort for damages to the product itself, absent personal injury or damage to other property. Rent–A–Car urged the district court to apply two exceptions to that rule, namely, (1) "no alternate remedy", and (2) "sudden calamity". However, the district court concluded that neither exception applied. The court also dismissed the breach of warranty counts for failure to allege privity.

Rent–A–Car subsequently filed its second amended complaint. The second amended complaint, essentially the same as the previously dismissed first amended complaint, alleged in addition that there was property lost in one of the bus fires that belonged to the passengers of the bus. Counts I and II consisted of negligent products liability claims, with Counts III and IV asserting claims of strict products liability claims. Rent–A–Car also added two other counts of negligence in Counts V and VI for Negligent Failure to Warn. Prevost moved to dismiss the second amended complaint for failure to state a claim.

The district court granted Prevost's motion to dismiss, reasoning that Rent–A–Car had failed to overcome the Economic Loss Rule. 788 F.Supp. 1203. Because Rent–A–Car did not assert an ownership interest in the property belonging to the passengers, the district court concluded that such property did not constitute "other property" for purposes of removing Rent–A–Car's claims from the Economic Loss Rule. Rent–A–Car then brought this appeal.

## II. Contentions of the Parties

### A. No Alternate Remedy

As its initial contention, Rent–A–Car argues that it has stated a cause of action under the theories of negligent products liability and strict products liability because it falls within the "no alternate remedy" exception to the Economic Loss Rule. The Florida Supreme Court adopted the Economic Loss Rule which bars recovery in tort for "purely economic losses," absent personal injury or damage to other property. *Florida Power and Light Co. v. Westinghouse Electric*, 510 So.2d 899, 901 (Fla.1987). Fueling the exclusion of tort recovery is the notion that contract principles are more appropriate than tort principles to resolve purely economic claims. Prior to its adoption of the Economic Loss Rule in *Florida Power and Light*, Rent–A–Car states that the Florida Supreme Court permitted recovery in tort for "purely economic losses," citing *A.R. Moyer, Inc. v. Graham*, 285 So.2d 397 (Fla. 1973), and *First American Title Ins. Co. v. First Title Serv. Co.*, 457 So.2d 467 (Fla. 1984). Rent–A–Car accordingly maintains that Florida's adoption of the Economic Loss Rule is not "ironclad," thus permitting resort to tort remedies where "no alternate remedy" in contract exists.

Rent–A–Car derives support for this distinction from the Florida Supreme Court's explanation of its decision in *A.R. Moyer*:

> What distinguishes *Moyer* from the above cases, however, is that the Plaintiff was not the beneficiary, either directly or as a third party beneficiary of the underlying contract. In that case we held a general contractor had a cause of action for the alleged negligent supervisory performance by an architect.... Since there was no contract under which the general contractor could recover his loss, we concluded he did have a cause of action in tort.

*AFM Corp. v. Southern Bell Telephone and Telegraph Co.*, 515 So.2d 180, 181 (Fla.1987). Rent–A–Car thus argues that *A.R. Moyer* supports the "no alternate remedy" exception

because it permitted tort recovery for pure economic loss where no contract action was possible.

Rent–A–Car buttresses its argument for such a "no alternate remedy" exception to the Economic Loss Rule by quoting a recent decision of the Fourth District Court of Appeals:

> ... It seems clear that the invocation of the rule precluding tort claims for only economic losses applies only when there are alternate theories of recovery better suited to compensate the damages party for a particular kind of loss.

*Latite Roofing Co., Inc. v. Urbanek,* 528 So.2d 1381, 1383 (Fla. 4th DCA 1988). Rent–A–Car maintains that the "no alternate remedy" exception derives from the policy underlying the Economic Loss Rule which "encourages parties to negotiate economic risks though warranty provisions and price." *Florida Power and Light, supra,* at 901. Where no warranty claim is possible, the "no alternate remedy" exception permits resort to tort principles to permit recovery because otherwise there would be no cause of action at all, according to Rent–A–Car. Rent–A–Car maintains that it falls within this "no alternate remedy" exception precisely because it lacks such a warranty claim against either Associated or Prevost.

Prevost responds that Florida in fact fails to recognize such a "no alternate remedy" exception as espoused by Rent–A–Car. Prevost principally relies upon the Florida Supreme Court's recent decision in *Casa Clara Condominium Association, Inc. v. Charley Toppino and Sons, Inc.,* 620 So.2d 1244 (Fla. 1993). In *Casa Clara,* according to Prevost, the Florida Supreme Court has refused to recognize any exceptions to the Economic Loss Rule, specifically disapproving *Latite Roofing Co. v. Urbanek,* 528 So.2d 1381 (Fla. 4th DCA 1988), and limiting *A.R. Moyer, Inc. v. Graham,* 285 So.2d 397 (Fla.1973), to its facts. In its limitation of *A.R. Moyer,* Prevost maintains that the Supreme Court has implicitly agreed with the reasoning of *Sandarac Association, Inc. v. W.R. Frizzell Architects, Inc.,* 609 So.2d 1349 (Fla. 2d DCA 1992).

The *Sandarac* decision analyzed the *Latite* decision and concluded that the court had misunderstood the significance of the dicta in *AFM* as creating a new relationship of duty in negligence to protect economic expectations merely because no contract exists. 609 So.2d at 1355. In refusing to recognize an exception to the Economic Loss Rule, the *Sandarac* court stated that the true distinction of *A.R. Moyer* explained by *AFM* was the fact that the contractor was forced to rely upon the abilities of the architect and that the architect actively supervised the project. *Id.* From this, Prevost concludes that the Supreme Court did not base its decision in *A.R. Moyer* upon the presence or absence of an alternative theory of liability, but rather upon the tort concept of a duty created by the undertaking of an act. Prevost relies upon the following language in *A.R. Moyer:*

> Considerations of reason and policy impel the conclusion that the position and authority of a supervising architect are such that he ought to labor under a duty to the prime contractor to supervise the project with due care under the circumstances, even though his sole contractual relationship is with the owner ...

*A.R. Moyer, supra,* at 401. Thus, Prevost maintains that *Latite* is an inaccurate interpretation of the law of Florida derived from dicta. Prevost further urges that permitting such an exception to the Economic Loss Rule is contradictory to the underpinnings of the rule's policy.

Finally, Prevost alternatively argues that Rent–A–Car has failed to show a factual basis for its legal conclusion that its "no alternate remedy" theory exists. Prevost bases this upon Rent–A–Car's conclusory assertion that no alternative theory of recovery exists and that Associated is not a "merchant" as defined under the Uniform Commercial Code.

## B. Sudden Calamity

As a second contention, Rent–A–Car argues that it has stated a cause of action under the theories of negligent products liability and strict products liability because it falls under the "sudden calamity" exception to the Economic Loss Rule. Under this

theory, several jurisdictions recognize an exception to the Economic Loss Rule where a sudden calamitous event causes damage. The exception appears to compensate for the unreasonable "risk of harm to persons" potentially associated with the sudden destruction of a product. Rent–A–Car asserts that only two cases applying Florida law discuss the "sudden calamity" exception, namely *Florida Power and Light Co. v. McGraw Edison Co.*, 696 F.Supp. 617 (S.D.Fla.1988), *aff'd*, 875 F.2d 873 (11th Cir.1989) and *General Dynamics Corp. v. Wright Airlines, Inc.*, 470 So.2d 788 (3d DCA 1985).

In *General Dynamics*, the court distinguished *Cedars of Lebanon Hosp. Corp. v. European X–Ray Distrib. of America, Inc.*, 444 So.2d 1068 (Fla. 3d DCA 1984), as a case where the property damage sustained was not the product of a sudden calamitous event. Thus, Rent–A–Car concluded that the court in *General Dynamics* determined that the plaintiff fell within the "sudden calamity" exception. *Id.* at 789 n. 1. Although the court in *Florida Power and Light Co. v. McGraw* denied recovery in the explosion of a transformer based upon the Economic Loss Rule, Rent–A–Car asserts that the instant case is distinguishable due to the unreasonable risk of harm to persons presented by the explosion of the buses. Rent–A–Car bases its argument upon the alleged fact that one of the buses caught fire while transporting school children.

Prevost argues that Florida has not adopted the "sudden calamity" exception, relying mainly upon the *Florida Power & Light Co. v. McGraw* decision. Further, Prevost notes that the court in *American Universal Insurance Group v. General Motors Corp.*, 578 So.2d 451 (Fla. 1st DCA 1991), referred to the exception but did not recognize its applicability in Florida. Finally, Prevost argues that adoption of the "sudden calamity" exception would lead to anomalous and undesirable results by exposing a manufacturer to vast and unpredictable liability. Such a result, according to Prevost, is contrary to the underlying rationale of the Economic Loss Rule which is to prevent endless liability from subsequent purchasers. As support for this contention, Prevost relies upon language in *East River Steam Ship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986):

> Permitting recovery for all foreseeable claims for a purely economic loss could make a manufacturer liable for vast sums. It would be difficult for a manufacturer to take into account the expectations of persons downstream who may encounter the product.

*Id.* at 874, 106 S.Ct. at 2304.

Prevost further argues that the "sudden calamity" exception itself is based upon faulty distinctions already rejected by the Supreme Court in *East River*:

> We realize that the damage may be qualitative, occurring through gradual deterioration or internal breakage. Or it may be calamitous. But either way, since by definition no person or other property is damaged, the resulting loss is purely economic. Even when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss ... is essentially the failure of the purchaser to receive the benefit of his bargain—traditionally the core of contract law.

*Id.* at 870, 106 S.Ct. at 2302. For innocent bystanders and consumers who are injured or have property damaged, tort and strict liability apply, serving the purpose of tort law to distribute the risk of loss to members of society in a situation where private contract cannot anticipate and compensate for the risk; in a commercial setting, the parties are free to negotiate who will bear the risk of loss. According to Prevost, this element of negotiation and hence, price adjustment, would be forfeited if a manufacturer were subjected to liability for the dissatisfaction of subsequent purchasers of whom it has no knowledge.

## C. Independent Tort of Duty to Warn

Third, and finally, Rent–A–Car contends that it has stated a cause of action under the theory of negligent failure to warn because it has alleged an independent tort separate from any contractual action. Although apparently no decisions of the Florida Supreme Court have squarely addressed this issue,

Rent–A–Car argues that its allegation that the failure to warn occurred "after the manufacturing process," creates an "independent tort" apart from any contractual actions. Rent–A–Car asserts that the Florida Supreme Court has recognized that the existence of such an independent tort will avoid the reach of the Economic Loss Rule. *See AFM Corp. v. Southern Bell*, 515 So.2d 180, 181 (Fla.1987) (quoting *Lewis v. Guthartz*, 428 So.2d 222, 224 (Fla.1982)). Where an "independent tort" is alleged separate and apart from any contractual action, Rent–A–Car asserts that the Economic Loss Rule is inapplicable, citing *Interstate Securities Corp. v. Hayes Corp.*, 920 F.2d 769 (11th Cir.1991). Rent–A–Car distinguishes the case of failure to warn a purchaser of a defect in a product known *at the time* of the manufacturing process from the instance where failure to warn upon the discovery of a defect occurs *after* the manufacturing process and *after* the contract. It is this instance of subsequent discovery which Rent–A–Car seeks to denominate as an independent tort sufficient to remove it from the reach of the Economic Loss Rule. *See Miller Industries v. Caterpillar Tractor Co.*, 733 F.2d 813 (11th Cir.1984); *McConnell v. Caterpillar Tractor Co.*, 646 F.Supp. 1520 (D.N.J.1986).

Prevost responds that Rent–A–Car's third argument represents an attempt to apply federal admiralty law which accords a favored status to fishermen instead of the more rigorous generally applicable Florida law. Further, Prevost asserts that the Supreme Court's decision in *East River* disapproved the *Miller* decision. Operation of the Economic Loss Rule, argues Prevost, turns not upon the timing of the asserted negligence but only upon its existence, coupled with the absence of personal injury and property damage; thus, absent personal injury or injury to property, there is no tort. Prevost asserts that Florida law adopts this limitation on the applicability of tort law, citing *Affiliates for Evaluation and Therapy v. Viasyn Corp.*, 500 So.2d 688, 690 (Fla. 3d DCA 1987). Further, Prevost states that the duty to warn cases following the tort's recognition in Florida in *Tampa Drug Co. v. Wait*, 103 So.2d 603 (Fla.1958), have uniformly dealt with injuries to person or property which resulted from a defective product. Thus, Prevost argues that the absence of tort damages precludes recognition of this third theory proposed by Rent–A–Car.

Further, Prevost adopts its policy arguments raised in urging against adoption of the "sudden calamity" exception. Permitting an "independent tort" to circumvent the Economic Loss Rule, according to Prevost, would allow a subsequent purchaser to create a warranty protection not purchased in the transaction by simply claiming that the manufacturer had information that the product might break down during use. Prevost urges that intrusion of tort law into commercial transactions is undesirable and should not be permitted, absent a compelling justification.

### III. Conclusion

We believe that the issues of Florida law raised by the parties in this appeal are appropriate for resolution by the highest court of Florida. We, therefore, certify the following questions:

(1) WHETHER, UNDER FLORIDA LAW, THE ECONOMIC LOSS RULE APPLIES TO NEGLIGENCE CLAIMS FOR THE MANUFACTURE OF A DEFECTIVE PRODUCT WHERE THE ONLY DAMAGES CLAIMED ARE TO THE PRODUCT ITSELF AND WHERE THE PLAINTIFF CLAIMS TO HAVE NO ALTERNATIVE THEORY OF RECOVERY.

(2) WHETHER, UNDER FLORIDA LAW, A CAUSE OF ACTION OTHERWISE PRECLUDED BY THE ECONOMIC LOSS RULE MAY BE MAINTAINED IF THE DAMAGE TO THE PRODUCT IS CAUSED BY A SUDDEN CALAMITOUS EVENT.

(3) WHETHER, UNDER FLORIDA LAW, A CAUSE OF ACTION MAY EXIST OUTSIDE THE BAR OF THE ECONOMIC LOSS RULE WHERE THE PLAINTIFFS ALLEGE A DUTY TO WARN WHICH AROSE FROM FACTS WHICH CAME TO THE KNOWLEDGE OF THE COMPANY AFTER THE MAN-

UFACTURING PROCESS AND AFTER THE CONTRACT.

We do not intend the particular phrasing of these questions to limit consideration of the problems posed by the entire case. The Court is at liberty to consider the problems and issues involved in this case as it perceives them to be. In order to assist the determination, the entire record, along with the briefs of the parties, shall be transmitted to the Supreme Court of Florida.

QUESTIONS CERTIFIED.