660 So.2d 628 (1995)
AIRPORT RENT-A-CAR, INC., etc., Appellant,
v.
PREVOST CAR, INC., etc., Appellee.
No. 83586.
Supreme Court of Florida.
June 15, 1995.
Rehearing Denied September 19, 1995.
*629 Gary S. Maisel of Patterson & Maloney, Fort Lauderdale, for appellant.
Daniel M. Bachi and Bard D. Rockenbach of Sellars, Supran, Cole, Marion & Bachi, P.A., West Palm Beach, for appellee.
Lynn E. Wagner and Richard A. Solomon of Baker & Hostetler, Orlando, amicus curiae, for The Florida Concrete & Products Ass'n.
R. Benjamin Reid, Wendy F. Lumish and Paul L. Nettleton of Popham, Haik, Schnobrich & Kaufman, Ltd., Miami, amicus curiae, for Product Liability Advisory Council, Inc.
G. William Bissett of Hardy, Bissett & Lipton, P.A., Miami, amicus curiae, for Masonite Corp.
SHAW, Justice.
We have for review the following questions certified to this Court by the United States Court of Appeals for the Eleventh Circuit in Airport Rent-A-Car, Inc. v. Prevost Car, Inc., 18 F.3d 1555 (11th Cir.1994):
(1) WHETHER, UNDER FLORIDA LAW, THE ECONOMIC LOSS RULE APPLIES TO NEGLIGENCE CLAIMS FOR THE MANUFACTURE OF A DEFECTIVE PRODUCT WHERE THE ONLY DAMAGES CLAIMED ARE TO THE PRODUCT ITSELF AND WHERE THE PLAINTIFF CLAIMS TO HAVE NO ALTERNATIVE THEORY OF RECOVERY.
(2) WHETHER, UNDER FLORIDA LAW, A CAUSE OF ACTION OTHERWISE PRECLUDED BY THE ECONOMIC LOSS RULE MAY BE MAINTAINED IF THE DAMAGE TO THE PRODUCT IS CAUSED BY A SUDDEN CALAMITOUS EVENT.
(3) WHETHER, UNDER FLORIDA LAW, A CAUSE OF ACTION MAY EXIST OUTSIDE THE BAR OF THE ECONOMIC LOSS RULE WHERE THE PLAINTIFFS ALLEGE A DUTY TO WARN WHICH AROSE FROM FACTS WHICH CAME TO THE KNOWLEDGE OF THE COMPANY AFTER THE MANUFACTURING PROCESS AND AFTER THE CONTRACT.
Airport, 18 F.3d at 1559. We have jurisdiction. Art. V, § 3(b)(6). We answer the first certified question in the affirmative and the second and third questions in the negative.
The Eleventh Circuit found the following facts:
Rent-A-Car owned several buses manufactured by Prevost. Two of the buses caught fire and were destroyed while in transport. According to Rent-A-Car, one of the buses caught fire while transporting school children. Rent-A-Car did not purchase the buses directly from Prevost or from a distributor. Rather, Rent-A-Car purchased the buses from Associated Cab Company, Inc., ("Associated"), who was asserted not to be a supplier or distributor of the buses. Further, Rent-A-Car alleged that Associated was not a merchant within the definition under the Uniform Commercial Code; thus, no express or implied warranty claim against Associated was brought. Instead, Rent-A-Car brought claims against Prevost, the manufacturer and seller of the buses, alleging the buses when sold were defective and unreasonably dangerous.
In its first amended complaint, Rent-A-Car alleged in Counts I and II that Prevost was liable under a strict products liability theory because the bus purchased by Rent-A-Car was defective when it left the manufacturer and that the defect made it unreasonably dangerous. Rent-A-Car claimed damages for the loss in the value of the bus, damage resulting from the loss of use of the bus, and costs of litigation. Counts III and IV asserted Prevost's liability under a negligence theory and included a demand for damages. Counts V and VI were for breach of warranty. Prevost moved to dismiss the complaint.
The district court granted Prevost's motion to dismiss. The district held that the Economic Loss Rule applied, precluding recovery in tort for damages to the product itself, absent personal injury or damage to other property. Rent-A-Car urged the district court to apply two exceptions to that rule, namely, (1) "no alternate remedy", and (2) "sudden calamity". However, the district court concluded that neither *630 exception applied. The court also dismissed the breach of warranty counts for failure to allege privity.
Rent-A-Car subsequently filed its second amended complaint. The second amended complaint, essentially the same as the previously dismissed first amended complaint, alleged in addition that there was property lost in one of the bus fires that belonged to the passengers of the bus. Counts I and II consisted of negligent products liability claims, with Counts III and IV asserting claims of strict products liability claims. Rent-A-Car also added two other counts of negligence in Counts V and VI for Negligent Failure to Warn. Prevost moved to dismiss the second amended complaint for failure to state a claim.
The district court granted Prevost's motion to dismiss, reasoning that Rent-A-Car had failed to overcome the Economic Loss Rule. Because Rent-A-Car did not assert an ownership interest in the property belonging to the passengers, the district court concluded that such property did not constitute "other property" for purposes of removing Rent-A-Car's claims from the Economic Loss Rule. Rent-A-Car then brought this appeal.
18 F.3d at 1555-56 (citation omitted). The federal court opined that the issues raised were appropriate for resolution by this Court.

The First Certified Question[1]
This Court's opinion in Casa Clara Condominium Ass'n v. Charley Toppino and Sons, Inc., 620 So.2d 1244 (Fla. 1993), is of particular importance in our answering the first certified question. In Casa Clara, Toppino supplied concrete used in building the Casa Clara condominiums and single-family homes. Allegedly, some of the concrete contained a high content of salt, thus causing it to crack and break apart. Casa Clara homeowners sued numerous defendants including Toppino for, inter alia, negligence and strict products liability. The circuit court dismissed all counts against Toppino, pursuant to its finding that the economic loss rule prohibits tort recovery when a product damages itself, thereby causing economic loss, but fails to cause personal injury or damage to property other than itself.[2] The district court affirmed and this Court approved the district court's decision. In so doing, we recognized that the law of contracts protects one's economic losses, whereas the law of torts protects society's interest in being free from harm. See Casa Clara, 620 So.2d at 1246-47. Finding no reason to burden society as a whole with the losses of one who has failed to bargain for adequate contractual remedies, we concluded that "`contract principles [are] more appropriate than tort principles for recovering economic loss without an accompanying physical injury or property damage.'" Casa Clara, 620 So.2d at 1247 (quoting Florida Power & Light Co. v. Westinghouse Elec. Corp., 510 So.2d 899, 902 (Fla. 1987)). In light of this conclusion, we disapproved several conflicting cases, including Latite Roofing Co., Inc. v. Urbanek, 528 So.2d 1381 (Fla. 4th DCA 1988), and limited A.R. Moyer, Inc. v. Graham, 285 So.2d 397 (Fla. 1973), strictly to its facts. Casa Clara at 1248.[3]
Airport Rent-A-Car (Airport) proffers that the Latite and Moyer cases, in which the *631 parties lacked privity of contract, are indicative of the "no alternative theory of recovery" exception to the economic loss rule.[4] Airport insists that this exception permits tort recovery for purely economic losses when the plaintiff has no alternative remedy of recovery and that the absence of contractual privity between Prevost and itself places it within the exception. We acknowledge that the Latite and Moyer decisions sanctioned the "no alternative theory of recovery" exception; however, we disagree with Airport's assertion that it falls within the exception. As stated above, Casa Clara specifically disapproved Latite, and limited Moyer to its facts, facts which are dissimilar to the ones now under review. In Moyer, the third-party general contractor asserted that the supervisory architect's negligence caused the general contractor to suffer purely economic losses. We stated that
a third party general contractor, who may foreseeably be injured or sustained an economic loss proximately caused by the negligent performance of a contractual duty of an architect, has a cause of action against the alleged negligent architect, notwithstanding absence of privity.
Moyer, 285 So.2d at 402. Pivotal to our decision was the supervisory nature of the relationship between the architect and the general contractor. As we stated in AFM Corp. v. Southern Bell Tel. and Tel. Co., 515 So.2d 180, 181 (Fla. 1987), "we based our decision [in Moyer] on the fact that the supervisory responsibilities vested in the architect carried with it a concurrent duty not to injure foreseeable parties not beneficiaries of the contract." The facts in this instance are void of supervisory responsibility; accordingly, Moyer is inapplicable.
Based on the above, we find that the economic loss rule cannot be circumvented by the no alternative theory of recovery exception, absent the required supervisory responsibilities as enunciated in Moyer. Accordingly, the first certified question is answered in the affirmative.

The Second Certified Question[5]
The second question requires us to determine if the economic loss rule can be circumvented when the property is damaged during a sudden calamitous event. When previously called upon to interpret Florida's economic loss rule we found guidance in East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), which expresses this country's majority view of the rule. See Casa Clara, 620 So.2d at 1247; AFM Corp., 515 So.2d at 181; Florida Power & Light Co. v. Westinghouse Elec. Corp., 510 So.2d 899, 901 (Fla. 1987). Turning again to East River, we find the following words dispositive of the sudden calamitous event issue:
We realize that the damage may be qualitative, occurring through gradual deterioration or internal breakage. Or it may be calamitous. But either way, since by definition no person or other property is damaged, the resulting loss is purely economic. Even when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain  traditionally the core concern of contract law.
476 U.S. at 870, 106 S.Ct. at 2302 (citations omitted). The key issue is whether there exists physical injury or other property damage; *632 if not, then remedies in tort generally do not lie. It is of no moment that damage occurred over a period of time or that it occurred suddenly. Accordingly, we answer the second certified question in the negative and find that a sudden calamitous event will not circumvent the economic loss rule.

The Third Certified Question[6]
Airport contends that subsequent to the manufacture of the buses, Prevost knew or should have known that they were defective and unreasonably dangerous and that Prevost failed to warn Airport of the danger. Airport argues that this failure created an independent tort exception to the economic loss rule which permits Airport to state a cause of action under the theory of negligent failure to warn. Airport cites as support for its position Interstate Securities Corp. v. Hayes Corp., 920 F.2d 769 (11th Cir.1991). Airport's reliance on Interstate Securities is misplaced. Interstate Securities is premised upon AFM Corp. v. Southern Bell Tel. and Tel. Co., 515 So.2d 180 (Fla. 1987), wherein AFM sued Southern Bell, in contract and in tort, to recover an economic loss. AFM then withdrew its contract claims, specifically announcing that the tort claim would not rely upon any contractual agreement between Southern Bell and itself. See AFM Corp. v. Southern Bell Tel. and Tel. Co., 796 F.2d 1467 (11th Cir.1986). In short, AFM sought to recover economic loss, flowing from a contractual breach, under a tort theory. 515 So.2d at 181. Finding that this case involved issues of unsettled Florida law, the United States Court of Appeals for the Eleventh Circuit certified the following question, as restated:
Does Florida permit a purchaser of services to recover economic losses in tort without a claim for personal injury or property damage?
Id. at 180; 796 F.2d at 1467.[7] This Court answered the question in the negative and held that "without some conduct resulting in personal injury or property damage, there can be no independent tort flowing from a contractual breach which would justify a tort claim solely for economic losses." 515 So.2d at 181-82. AFM Corp. reaffirms that there can be no independent tort action for purely economic loss without an accompanying physical injury or other property damage.
As we have previously stated, the economic loss rule's focus is on whether there exists physical injury or other property damage. This distinction rests
on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands.
Casa Clara, 620 So.2d at 1245 (quoting Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal. Rptr. 17, 23, 403 P.2d 145, 151 (1965)). In sum, failure to warn, without the requisite harm, will not circumvent the economic loss rule to allow a cause of action where the plaintiffs allege a duty to warn which arose from facts which came to the knowledge of the company after the manufacturing process and after the contract. Accordingly, the third certified question is answered in the negative.
Having answered the questions certified by the United States Court of Appeals for the Eleventh Circuit, we remand for its disposition of this matter.
It is so ordered.
GRIMES, C.J., and OVERTON, HARDING and ANSTEAD, JJ., concur.
*633 WELLS, J., concurs in part and dissents in part with an opinion, in which KOGAN, J., concurs.
WELLS, Justice, concurring in part and dissenting in part.
I concur that this Court's decision in Casa Clara Condominium Ass'n, Inc. v. Charley Toppino & Sons Inc., 620 So.2d 1244 (Fla. 1993), requires answering the first and second certified questions consistent with the answers given by the majority. However, if I had participated in Casa Clara, my opinion in that case would have been in accord with Justice Shaw's dissent.
I dissent here in the majority's expansion of the economic loss rule so as to require an answer to the third question in the negative. I believe that we should recognize the distinction between a manufacturer's negligence occurring as part of the manufacturing process and a manufacturer's negligent failure to warn of a defect in the product which becomes proven after the project is manufactured. This distinction has been recognized by the federal courts in Nicor Supply Ships Associates v. General Motors Corp., 876 F.2d 501 (5th Cir.1989), McConnell v. Caterpillar Tractor Co., 646 F. Supp. 1520 (D.N.J. 1986), and Miller Industries v. Caterpillar Tractor Co., 733 F.2d 813 (11th Cir.1984). These decisions recognize the salient fact that a manufacturer's negligence after manufacture has been completed goes not to the quality of the product that the buyer expects from the bargain in obtaining the product but to the type of conduct which tort law governs as a matter of social and public policy.
It is my opinion that in our state, our policy should be that a manufacturer does have a duty to warn of a defect known to it to exist in the product when that defect's existence becomes apparent to the manufacturer through the product's use by consumers. Our commitment to the economic loss rule should not be so total that we permit a manufacturer to proceed "ostrich like" while knowing that use of a product as it was intended is causing loss to the businesses, computer programs, homes, vehicles, or the like of those who use the product.
I would answer the third question in the affirmative.
KOGAN, J., concurs.
NOTES
[1] The question is: "WHETHER, UNDER FLORIDA LAW, THE ECONOMIC LOSS RULE APPLIES TO NEGLIGENCE CLAIMS FOR THE MANUFACTURE OF A DEFECTIVE PRODUCT WHERE THE ONLY DAMAGES CLAIMED ARE TO THE PRODUCT ITSELF AND WHERE THE PLAINTIFF CLAIMS TO HAVE NO ALTERNATIVE THEORY OF RECOVERY." 18 F.3d at 1559.
[2] Economic losses are "`disappointed economic expectations,' which are protected by contract law, rather than tort law." Casa Clara, 620 So.2d at 1246.
[3] The other cases disapproved were Adobe Building Centers, Inc. v. Reynolds, 403 So.2d 1033 (Fla. 4th DCA), review dismissed, 411 So.2d 380 (Fla. 1981), and Drexel Properties, Inc. v. Bay Colony Club Condominium, Inc., 406 So.2d 515 (Fla. 4th DCA 1981), review denied, 417 So.2d 328 (Fla. 1982). To the extent they conflicted with Casa Clara, the following decisions were disapproved: (1) Parliament Towers Condominium v. Parliament House Realty, Inc., 377 So.2d 976 (Fla. 4th DCA 1979); (2) Navajo Circle, Inc. v. Development Concepts Corp., 373 So.2d 689 (Fla. 2d DCA 1979); and (3) Simmons v. Owens, 363 So.2d 142 (Fla. 1st DCA 1978). 620 So.2d at 1248.
[4] Airport further asserts that in First American Title Ins. Co. v. First Title Service Co., 457 So.2d 467 (Fla. 1984), recovery was allowed in a negligence action against an abstract company for purely economic losses. Recovery was allowed, however, because the plaintiff insurance company was the third-party beneficiary of the contract between the abstract company and the property owner. As such, "the abstracter's contractual duty to perform the service skillfully and diligently runs to the benefit of such known third parties." 457 So.2d at 473. We specifically declined to adopt a policy that would make abstracters liable to any person who could foreseeably rely on a negligently prepared abstract to his or her detriment. Id. at 472. In this instance, Airport does not assert a third-party beneficiary cause of action; accordingly, we find First American inapplicable.
[5] The question is: "WHETHER, UNDER FLORIDA LAW, A CAUSE OF ACTION OTHERWISE PRECLUDED BY THE ECONOMIC LOSS RULE MAY BE MAINTAINED IF THE DAMAGE TO THE PRODUCT IS CAUSED BY A SUDDEN CALAMITOUS EVENT." 18 F.3d at 1559.
[6] The question is: "WHETHER, UNDER FLORIDA LAW, A CAUSE OF ACTION MAY EXIST OUTSIDE THE BAR OF THE ECONOMIC LOSS RULE WHERE THE PLAINTIFFS ALLEGE A DUTY TO WARN WHICH AROSE FROM FACTS WHICH CAME TO THE KNOWLEDGE OF THE COMPANY AFTER THE MANUFACTURING PROCESS AND AFTER THE CONTRACT." 18 F.3d at 1559.
[7] The federal court certified three questions, but this Court restated the questions as quoted above. 515 So.2d at 180.