[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEAL
ELEVENTH CIRCUIT

*APRIL 16, 2013*

*JOHN LEY*

*CLERK*

—————

No. 09-11718

—————

D. C. Docket No. 08-80254-CV-DTKH

TIARA CONDOMINIUM ASSOCIATION, INC.,
A Florida non-profit corporation,
In its own name and as agent for all owners
of record of all individual condominium
parcels with the Tiara Condominium,

Plaintiff-Appellant,

versus

MARSH & MCLENNAN COMPANIES, INC.,
a Delaware Corporation,
MARSH, INC.,
MARSH, USA, INC.,

Defendants-Appellees.

—————

Appeal from the United States District Court
for the Southern District of Florida

—————

(April 16, 2013)

Before DUBINA, Chief Judge, KRAVITCH, Circuit Judge, and EDENFIELD,[*] District Judge.

DUBINA, Chief Judge:

As we stated in our earlier opinion recorded at *Tiara Condominium Association, Inc., v. Marsh & McClennan Companies, Inc.*, 607 F.3d 742 (11th Cir. 2010), this appeal arises from a contract between an insurance broker and the association responsible for managing the condominium tower located on Singer Island, Florida. The tower suffered extensive wind damage from two hurricanes in September 2004. The condominium association claimed that the broker caused part of its losses by failing to procure an adequate insurance policy for the condominium. In our earlier opinion, we were able to resolve the issues raised on appeal with respect to the association's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligent misrepresentation. We affirmed the district court's grant of summary judgment on all of those claims. Concerning the claims for negligence and breach of fiduciary duty, because we concluded that Florida law was unclear, we certified the following question to the Supreme Court of Florida concerning Florida's application of the economic loss rule:

---

[*] Honorable B. Avant Edenfield, United States District Judge for the Southern District of Georgia, sitting by designation.

**CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA, PURSUANT TO FLA. R. APP. P. 9.150(a). TO THE SUPREME COURT OF FLORIDA AND ITS HONORABLE JUSTICES:**

DOES AN INSURANCE BROKER PROVIDE A "PROFESSIONAL SERVICE" SUCH THAT THE INSURANCE BROKER IS UNABLE TO SUCCESSFULLY ASSERT THE ECONOMIC LOSS RULE AS A BAR TO TORT CLAIMS SEEKING ECONOMIC DAMAGES THAT ARISE FROM THE CONTRACTUAL RELATIONSHIP BETWEEN THE INSURANCE BROKER AND THE INSURED?

In certifying our question, we noted that the Supreme Court of Florida retains the discretion to restate the issue and to answer the question in the manner it chooses. *See Stevens v. Battelle Mem'l Inst.*, 488 F.3d 896, 904 (11th Cir. 2007). The Supreme Court of Florida did precisely that. It restated the certified question as follows:

**DOES THE ECONOMIC LOSS RULE BAR AN INSURED'S SUIT AGAINST AN INSUANCE BROKER WHERE THE PARTIES ARE IN CONTRACTUAL PRIVITY WITH ONE ANOTHER AND THE DAMAGES SOUGHT ARE SOLELY FOR ECONOMIC LOSSES?**

3

The Supreme Court of Florida answered its question in the negative and held that the application of the economic loss rule was limited to products liability cases. Accordingly, based on the opinion the Supreme Court of Florida filed with the Eleventh Circuit Court of Appeals on March 11, 2013, and attached hereto as "Appendix I," we vacate the district court's grant of summary judgment in favor of Marsh on Tiara's claims for negligence and breach of fiduciary duty and remand those claims for the district court to reconsider them in light of the Supreme Court of Florida's opinion.

**VACATED and REMANDED.**

# Supreme Court of Florida

No. SC10-1022

**TIARA CONDOMINIUM ASSOCIATION, INC., etc.,**
Appellant,

vs.

**MARSH & MCLENNAN COMPANIES, INC., etc., et al.,**
Appellees.

[March 7, 2013]

LABARGA, J.

This case is before the Court for review of a question of Florida law certified by the United States Court of Appeals for the Eleventh Circuit that is determinative of a cause pending in that court and for which there appears to be no controlling precedent. We have jurisdiction. See art. V, § 3(b)(6), Fla. Const. In Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Co., Inc., 607 F.3d 742, 749 (11th Cir. 2010), the Eleventh Circuit certified the following question to this Court:

> DOES AN INSURANCE BROKER PROVIDE A "PROFESSIONAL SERVICE" SUCH THAT THE INSURANCE BROKER IS UNABLE TO SUCCESSFULLY ASSERT THE ECONOMIC LOSS RULE AS A BAR TO TORT CLAIMS SEEKING ECONOMIC DAMAGES THAT ARISE FROM THE CONTRACTUAL

RELATIONSHIP BETWEEN THE INSURANCE BROKER AND THE INSURED?

Because the question as certified by the Eleventh Circuit is premised on the continued applicability of the economic loss rule in cases involving contractual privity, we restate the certified question as follows:

> DOES THE ECONOMIC LOSS RULE BAR AN INSURED'S SUIT AGAINST AN INSURANCE BROKER WHERE THE PARTIES ARE IN CONTRACTUAL PRIVITY WITH ONE ANOTHER AND THE DAMAGES SOUGHT ARE SOLELY FOR ECONOMIC LOSSES?

We answer this question in the negative and hold that the application of the economic loss rule is limited to products liability cases. Therefore, we recede from prior case law to the extent that it is inconsistent with this holding. We begin by discussing the facts and procedural background of this case. We then turn to our analysis.

## FACTS AND PROCEDURAL BACKGROUND

The facts of this case are set forth in the Eleventh Circuit Court of Appeals' opinion in <u>Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Co., Inc.</u>, 607 F.3d 742 (11th Cir. 2010). We summarize the facts here. Tiara Condominium Association (Tiara) retained Marsh & McLennan (Marsh) as its insurance broker. One of Marsh's responsibilities was to secure condominium insurance coverage. Marsh secured windstorm coverage through Citizens Property Insurance Corporation (Citizens), which issued a policy that contained a loss limit in an

- 2 -

amount close to $50 million. In September 2004, Tiara's condominium sustained significant damage caused by hurricanes Frances and Jeanne. Tiara began the process of loss remediation. After being assured by Marsh that the loss limits coverage was per occurrence (meaning that Tiara would be entitled to almost $100 million rather than coverage in the aggregate, which would be half of that amount), Tiara proceeded with more expensive remediation efforts. However, when Tiara sought payment from Citizens, Citizens claimed that the loss limit was $50 million in the aggregate, not per occurrence. Eventually, Tiara and Citizens settled for approximately $89 million, but that amount was less than the more than $100 million spent by Tiara.

In October 2007, Tiara filed suit against Marsh, alleging (1) breach of contract, (2) negligent misrepresentation, (3) breach of the implied covenant of good faith and fair dealing, (4) negligence, and (5) breach of fiduciary duty. The trial court granted summary judgment in favor of Marsh on all claims and Tiara appealed to the Eleventh Circuit. The appeals court concluded that summary judgment was proper as to the breach of contract, negligent misrepresentation, and breach of implied covenant of good faith and fair dealing claims.[1] However, the appeals court did not affirm the summary judgment granted by the trial court on

1. The Eleventh Circuit concluded that Marsh correctly interpreted the policy as containing a per-occurrence limit of liability. See Tiara, 603 F.3d at 747.

the negligence and breach of fiduciary duty claims, which were based on Tiara's allegations that Marsh was either negligent or breached its fiduciary duty by failing to advise Tiara of its complete insurance needs and by failing to advise Tiara of its belief that Tiara was underinsured. As to these two claims, the appeals court certified a question to this Court to determine whether the economic loss rule prohibits recovery, or whether an insurance broker falls within the professional services exception that would allow Tiara to proceed with the claims. We turn now to a discussion of the economic loss rule.

## ANALYSIS

### Origin and Development of the Economic Loss Rule

"The exact origin of the economic loss rule is subject to some debate and its application and parameters are somewhat ill-defined." Moransais v. Heathman, 744 So. 2d 973, 979 (Fla. 1999). In its simplest form, we noted, the rule appeared initially in both state and federal courts in products liability type cases. Id. at 979. A historical review of the doctrine reveals that it was introduced to address attempts to apply tort remedies to traditional contract law damages. In Casa Clara Condominium Ass'n, Inc. v. Charley Toppino and Sons, Inc., 620 So. 2d 1244 (Fla. 1993), we recognized the economic loss rule as "the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby

- 4 -

encourages citizens to avoid causing physical harm to others." Id. at 1246 (quoting Sidney R. Barrett, Jr., Recovery of Economic Loss in Tort for Construction Defects: A Critical Analysis, 40 S.C.L. Rev. 891, 894 (1989)). We have defined economic loss as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." Casa Clara, 620 So. 2d at 1246 (quoting Note, Economic Loss in Products Liability Jurisprudence, 66 Colum. L. Rev. 917, 918 (1966)). We further explained that economic loss

> includes "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." Comment, Manufacturers' Liability to Remote Purchasers for "Economic Loss" Damages–Tort or Contract?, 114 U. Pa. L. Rev. 539, 541 (1966). In other words, economic losses are "disappointed economic expectations," which are protected by contract law, rather than tort law. Sensenbrenner v. Rust, Orling & Neale Architects, Inc., 236 Va. 419, 374 S.E. 2d 55, 58 (1988); Stuart v. Coldwell Banker Commercial Group, Inc., 109 Wash. 2d 406, 745 P.2d 1284 (1987).

Casa Clara, 620 So. 2d at 1246.

Simply put, the economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses. Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc., 891 So. 2d 532, 536 (Fla. 2004). The rule has its roots in the products liability arena, and was primarily intended to limit actions in the products liability context.

Despite its underpinnings in the products liability context, the economic loss rule has also been applied to circumstances when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract.

## Contractual Privity Economic Loss Rule

"The prohibition against tort actions to recover solely economic damages for those in contractual privity is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." Am. Aviation, 891 So. 2d at 536 (citing Ginsberg v. Lennar Fla. Holdings, Inc., 645 So. 2d 490, 494 (Fla. 3d DCA 1994) ("Where damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort.")). When the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement. Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract. Am. Aviation, 891 So. 2d at 536-37); Weimar v. Yacht Club Point Estates, Inc., 223 So. 2d 100, 103 (Fla. 4th DCA 1969) ("[N]o cause of action in tort can arise from a breach of a duty existing by virtue of contract.").

- 6 -

The contractual privity application of the economic loss rule is best exemplified by our decision in AFM Corp. v. Southern Bell Telephone & Telegraph Co., 515 So. 2d 180 (Fla. 1987).[2] There, AFM entered into an agreement with Southern Bell that included placing AFM's advertising in the yellow pages. See id. at 180. However, Southern Bell listed an incorrect phone number for AFM, causing AFM economic damages. See id. In asserting a claim for economic losses, AFM chose to proceed solely on a negligence theory in the trial court below rather than base its theory of recovery on any agreement between the parties. See id. at 181. In determining that AFM could not recover economic losses based on a tort theory, this Court noted that AFM's contract with Southern Bell "defined the limitation of liability through bargaining, risk acceptance, and compensation." Id. Because AFM had not proved that Southern Bell committed a tort independent of the breach of contract, this Court concluded that AFM had no basis for recovery in negligence. See id.

Subsequently, in American Aviation, we recognized that despite the general prohibition against a recovery in tort for economic damages for parties in privity of contract, we have allowed it in torts committed independently of the contract breach, such as fraud in the inducement. See 891 So. 2d at 537. For example, in

_____

2. We later receded from AFM to the extent that it was unnecessarily expansive in its reliance on the economic loss rule as opposed to fundamental contractual principles. See American Aviation, 891 So. 2d at 542.

- 7 -

<u>HTP, Ltd. v. Lineas Aereas Costarricences, S.A.</u>, 685 So. 2d 1238 (Fla. 1996), we

stated:

> The economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action. Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breached the contract. Fraudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract.

<u>Am. Aviation</u>, 891 So. 2d at 537 (quoting <u>HTP, Ltd.</u>, 685 So. 2d at 1239 (citations

omitted)). <u>See also</u> <u>PK Ventures, Inc. v. Raymond James & Assocs.</u>, 690 So. 2d

1296 (Fla. 1997) (economic loss rule did not preclude a cause of action by the

buyer of commercial property against the seller's broker for negligent

misrepresentation).[3]

Another situation in which this Court has determined that public policy

dictates that liability not be limited to the terms of the contract involves cases such

as those alleging neglect in providing professional services. <u>See, e.g.</u>, <u>Moransais</u>,

744 So. 2d at 983 ("While provisions of a contract may impact a legal dispute,

---

3. In <u>Moransais</u>, in describing our refusal to apply our past liberal application of the economic loss rule in <u>PK Ventures</u> and <u>HTP, Ltd.</u>, we made the following observation: "More recently this Court has recognized the danger in an unprincipled extension of the rule, and we have declined to extend the economic loss rule to actions based on fraudulent inducement and negligent misrepresentation." 744 So. 2d at 981.

-8-

including an action for professional services, the mere existence of such a contract should not serve per se to bar an action for professional malpractice.").

## Products Liability Economic Loss Rule

Although the economic loss rule has, over time, been extended to the contractual privity context, the roots of the rule may be found in the products liability context. The products liability economic loss rule developed to protect manufacturers from liability for economic damages caused by a defective product beyond those damages provided by warranty law. Am. Aviation, 891 So. 2d at 537-38. As the theory of strict liability replaced the theory of implied warranties with regard to actions based on defective products that resulted in personal injury, the issue arose as to whether the courts should permit a cause of action in tort by one who suffered purely economic loss due to a defective product. Id. at 539. For those who were in contractual privity, actions based on breach of warranty continued as the viable method if the only damages were economic in nature. Id. But for those who were not in contractual privity and who sustained economic losses as a result of defective products, the question became what theory of recovery would be proper. Id.

The development of Florida's products liability economic loss rule can be traced to two cases: Seely v. White Motor Co., 403 P.2d 145, 149 (Cal. 1965), and East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 871

(1986). In Seely, the California Supreme Court held that the doctrine of strict liability in tort had not supplanted causes of action for breach of express warranty. The court was confronted with a situation in which a plaintiff sought recovery for economic loss resulting from his purchase of a truck that failed to perform according to expectations. See id. at 149. The California Supreme Court agreed with the trial court that the defendant could recover the money he paid on the purchase price of the truck and for his lost profits on the basis of breach of express warranty, see id. at 148, but rejected the argument that warranty law had been superseded by the doctrine of strict liability. See id. at 149. The court concluded that the strict liability doctrine was not intended to undermine the warranty provisions of sales or contract law, but was designed to govern the wholly separate and distinct problem of physical injuries caused by defective products. See id. at 149-50.

The California Supreme Court recognized that the rules of warranty continued to function well in a commercial setting, allowing the manufacturer to determine the quality of the product and the scope of its liability if the product failed to perform. The court reasoned that a manufacturer's liability under that theory would extend to all subsequent purchasers regardless of whether the manufacturer's promise regarding the fitness of the product was ever communicated to those purchasers. If the manufacturer were strictly liable for

economic losses resulting from the failure of its product to perform as promised by the warranty, it would be liable not only to the initial purchaser, but to every consumer who subsequently obtained possession of the product. See id. at 150.

In East River, the United States Supreme Court adopted the reasoning in Seely when it considered the issue of economic loss resulting from defective products in the context of admiralty. According to the Supreme Court, when the damage is to the product itself, "the injury suffered—the failure of the product to function properly—is the essence of a warranty action, through which a contracting party can seek to recoup the benefit of its bargain." Id. East River, 476 U.S. at 868 (emphasis supplied). The Court stated:

> Contract law, and the law of warranty in particular, is well suited to commercial controversies of the sort involved in this case because the parties may set the terms of their own agreements. The manufacturer can restrict its liability, within limits, by disclaiming warranties or limiting remedies. In exchange, the purchaser pays less for the product.

Id. at 872-73 (emphasis supplied) (footnote and citation omitted). Recognizing that extending strict products liability to cover economic damage would result in "contract law . . . drown[ing] in a sea of tort," id. at 866, the Supreme Court held that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." Id. at 871. Thus, from the outset, the focus of the economic loss rule was directed to damages resulting from defects in the product itself.

Relying on the reasoning in <u>Seely</u> and <u>East River</u>, this Court adopted the products liability economic loss rule, precluding recovery of economic damages in tort where there is no property damage or personal injury, in <u>Florida Power & Light Co. v. Westinghouse Elec. Corp.</u>, 510 So. 2d 899 (Fla. 1987), our seminal case on the applicability of the economic loss rule. Florida Power & Light (FPL) entered into contracts with Westinghouse in which Westinghouse agreed to design, manufacture, and furnish two nuclear steam supply systems, including six steam generators. FPL discovered leaks in all six generators. FPL brought suit, alleging that Westinghouse was liable for breach of express warranties in the contracts and for negligence, and sought damages for the cost of repair, revision, and inspection of the steam generators. <u>Id.</u> at 900.

In determining whether Florida law permitted FPL to recover the economic losses in tort without a claim for personal injury or separate property damage, this Court considered the policy issues supporting the application of a rule that limits tort recovery for economic losses when a product damages itself. <u>Id.</u> Concluding that warranty law was more appropriate than tort law for resolving economic losses in this context, the Court adopted the holding in <u>East River</u> that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products liability theory to prevent a product from injuring itself." <u>Florida Power</u>, 510 So.

2d at 901 (quoting <u>East River</u>, 476 U.S. at 871). Thus, as we reaffirmed in

<u>American Aviation</u>:

> The economic loss rule adopted in <u>Florida Power</u> represents this Court's pronouncement that, notwithstanding the theory of strict liability adopted in <u>West</u>,[4] strict liability has not replaced warranty law as the remedy for frustrated economic expectations in the sale of goods. In exchange for eliminating the privity requirements of warranty law and <u>expanding</u> the tort liability for manufacturers of defective products which cause personal injury, we expressly limited tort liability with respect to defective products to injury caused to persons or damage caused to property other than the defective product itself.

<u>Am. Aviation</u>, 891 So. 2d at 541. We also noted that "the products liability

economic loss rule articulated in <u>Seely</u> and <u>East River</u>, and adopted by this Court

in <u>Florida Power</u>, applies even in the absence of privity of contract." <u>Id.</u> (citing

<u>Airport Rent-A-Car, Inc. v. Prevost Car, Inc.</u>, 660 So. 2d 628, 631 (Fla. 1995)

(holding cause of action for negligence against manufacturer of defective buses

was barred by the economic loss rule notwithstanding absence of privity)); <u>see also</u>

<u>Casa Clara</u>, 620 So. 2d at 1248 (holding cause of action against manufacturer of

defective concrete was barred by the economic loss rule notwithstanding absence

of privity).

Simply stated, "[t]he essence of the early holdings discussing the rule is to

prohibit a party from suing in tort for purely economic losses to a product or object

---

4. In <u>West v. Caterpillar Tractor Co.</u>, 336 So. 2d 80, 92 (Fla. 1976), we adopted the theory of strict products liability in Florida.

provided to another for consideration, the rationale being that in those cases 'contract principles [are] more appropriate than tort principles for resolving economic loss without an accompanying physical injury or property damage.' " Moransais, 744 So. 2d at 980 (citing Florida Power, 510 So. 2d at 902). Such was the reasoning in East River, Seely, and ultimately, Florida Power.

An examination of the application of the economic loss rule in Florida from its inception to our ruling in Florida Power, reveals that this Court adhered strictly to the reasoning of East River and Seely. Subsequent to our ruling in Florida Power, however, we issued a number of rulings which, as aptly stated in Moransais, "appeared to expand the application of the rule beyond its principled origins and have contributed to applications of the rule by trial and appellate courts to situations well beyond our original intent." Moransais, 744 So. 2d at 980. For example, in AFM, as previously discussed, we extended the economic loss rule to preclude a negligence claim arising from breach of a service contract in a nonprofessional service context. See AFM, 515 So. 2d at 181. We also noted in Moransais, that "[w]hile we continue to believe the outcome of [AFM] is sound, we may have been unnecessarily over-expansive in our reliance on the economic loss rule as opposed to fundamental contractual principles." Moransais, 744 So. 2d at 981.

- 14 -

In Casa Clara, we held that the economic loss rule barred a cause of action in tort for providing defective concrete where there was no personal injury or damage to property other than to the product itself.[5] Casa Clara, 620 So. 2d at 1248. In Airport Rent-A-Car, we followed the reasoning in Casa Clara in holding the economic loss rule barred a cause of action for negligence against the manufacturer of defective buses where the only damage alleged was to the buses themselves. Airport Rent-A-Car, 660 So. 2d at 630-31.

In American Aviation, in recognizing our history of unprincipled extension of the rule, we concluded that the economic loss rule should be expressly limited to the original rationale and intent of Seely, East River, and Florida Power, and held that a manufacturer or distributor in a commercial relationship has no duty beyond that arising from its contract to prevent a product from malfunctioning or damaging itself. Am. Aviation, 891 So. 2d at 542. "In other words, we reaffirm our recognition of the products liability economic loss rule." Id. at 543. Despite this recognition, we expressly noted that the "other property" exception to the products liability economic loss rule remained viable. Id. In addition to the "other

---

5. Our opinion, however, was not unanimous, especially as to our characterization of "other property." We stated that tort law was designed to protect the interest of society as a whole by imposing a duty of reasonable care to prevent property damage or physical harm to others, whereas contract law operates to protect the economic expectations of the contracting parties when a "product" is the object of the contract. Casa Clara, 620 So. 2d at 1246.

property" exception, we also reaffirmed that in cases involving either privity of contract or products liability, the other exceptions to the economic loss rule that we have developed, such as for professional malpractice,[6] fraudulent inducement,[7] and negligent misrepresentation,[8] or free-standing statutory causes of action still apply.[9] Am. Aviation, 891 So. 2d at 543. We expressly emphasized, "[t]hese exceptions remain untouched by our ruling today." See id.

Thus, despite our effort to roll back the economic loss rule to its products liability roots, we left untouched a number of exceptions which continue to extend the application of the rule beyond our original limited intent.

## A Legacy of Unprincipled Expansion

For some time, as reflected by the foregoing discussion, this Court has been concerned with what it perceived as an over-expansion of the economic loss rule. We began expressing this concern in Moransais, where we noted our refusal to extend its application to actions based on fraudulent inducement and negligent representation cases. Id. at 981 (citing PK Ventures (negligent misrepresentation); HTP (fraudulent inducement)). We observed,

---

6. See Moransais, 744 So. 2d at 983.

7. See HTP, Ltd., 685 So. 2d at 1239.

8. See PK Ventures, 690 So. 2d at 1297.

9. See Comptech Int'l, Inc. v. Milam Commerce Park, Ltd., 753 So. 2d 1219, 1221 (Fla. 1999)

- 16 -

the [economic loss] rule was primarily intended to limit actions in the product liability context, and its application should generally be limited to those contexts or situations where the policy considerations are substantially identical to those underlying the product liability-type analysis. We hesitate to speculate further on situations not actually before us. The rule, in any case, should not be invoked to bar well-established causes of actions in tort, such as professional malpractice.

Moransais, 744 So. 2d at 983 (footnote omitted). Five years later, in American Aviation, we reaffirmed our concern with the over-expansion of the rule and again noted that the economic loss rule should be expressly limited. We emphasized this concern with the following statement:

Several justices on this Court have supported expressly limiting the economic loss rule to its principled origins. In Moransais, Justice Wells stated "directly that it is [his] view that the economic loss rule should be limited to cases involving a product which damages itself by reason of a defect in the product." Moransais, 744 So. 2d at 984 (Wells, J., concurring). Two justices subsequently joined Justice Wells when he reiterated this position in Comptech International, Inc. v. Milam Commerce Park, Ltd., 753 So. 2d 1219 (Fla. 1999). See id. at 1227 (Wells, J., concurring with an opinion in which Justices Lewis and Pariente joined).

Am. Aviation, 891 So. 2d at 542. Thus, in Moransais, Comptech, and American Aviation, this Court clearly expressed its desire to return the economic loss rule to its intended purpose—to limit actions in the products liability context. In each instance, however, we left intact a number of exceptions that continue the rule's unprincipled expansion. We simply did not go far enough.

Having reviewed the origin and original purpose of the economic loss rule, and what has been described as the unprincipled extension of the rule, we now take this final step and hold that the economic loss rule applies only in the products liability context. We thus recede from our prior rulings to the extent that they have applied the economic loss rule to cases other than products liability. The Court will depart from precedent as it does here "when such departure is 'necessary to vindicate other principles of law or to remedy continued injustice.'" Allstate Indem. Co. v. Ruiz, 899 So. 2d 1121, 1131 (Fla. 2005) (quoting Haag v. State, 591 So. 2d 614, 618 (Fla. 1992)). Stare decisis will also yield when an established rule has proven unacceptable or unworkable in practice. See Westgate Miami Beach, Ltd. v. Newport Operating Corp., 55 So. 3d 576, 574 (Fla. 2010). Our experience with the economic loss rule over time, which led to the creation of the exceptions to the rule, now demonstrates that expansion of the rule beyond its origins was unwise and unworkable in practice. Thus, today we return the economic loss rule to its origin in products liability.

## CONCLUSION

Because we now limit the application of the economic loss rule to cases involving products liability, it is not necessary for us to decide whether the economic loss rule exception for professionals applies to insurance brokers. Based on the foregoing, we answer the rephrased certified question in the negative and

- 18 -

hold that the application of the economic loss rule is limited to products liability cases. Having answered the rephrased certified question, we return this case to the Eleventh Circuit Court of Appeals.

It is so ordered.

PARIENTE, LEWIS, QUINCE, and PERRY, JJ., concur.
PARIENTE, J., concurs with an opinion, in which LEWIS and LABARGA, JJ., concur.
POLSTON, C.J., dissents with an opinion, in which CANADY, J., concurs.
CANADY, J., dissents with an opinion, in which POLSTON, C.J., concurs.


NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.


PARIENTE, J., concurring.

I concur with the majority's principled conclusion that the economic loss rule is limited to the products liability context. I write to address Justice Canady's assertion in dissent that the Court's decision represents a "dramatic unsettling of Florida law," dissenting op. at 33 (Canady, J.), and to explain that the majority's conclusion is fully consistent with the development of this Court's jurisprudence on the applicability of the economic loss rule in Florida.

The majority's conclusion that the economic loss rule is limited to the products liability context is not a departure from precedent, but instead simply represents the culmination of the Court's measured articulation of the economic loss rule's original intent. This view has been expressed various times, starting in

- 19 -

<u>Moransais v. Heathman</u>, 744 So. 2d 973 (Fla. 1999), where Justice Wells stated his belief that "the economic loss rule should be limited to cases involving a product which damages itself by reason of a defect in the product" and that some of the Court's prior decisions had produced "confusion as to the rule's applicability." <u>Id.</u> at 984 (Wells, J., concurring). Justice Wells, joined by Justice Lewis and myself, similarly explained in <u>Comptech International, Inc. v. Milam Commerce Park, Ltd.</u>, 753 So. 2d 1219, 1227 (Fla. 1999) (Wells, J., concurring), that "in order to clarify the application of the economic loss rule," the Court should "expressly state that its application is limited to product claims." Today, the Court has done so. This decision provides clear guidance to the lower courts as to the meaning of the economic loss rule in Florida and is both doctrinally principled and consistent with the trajectory of our prior precedent.

Our decision is neither a monumental upsetting of Florida law nor an expansion of tort law at the expense of contract principles. To the contrary, the majority merely clarifies that the economic loss rule was always intended to apply only to products liability cases. <u>See</u> <u>Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.</u>, 891 So. 2d 532, 541 (Fla. 2004) ("In exchange for eliminating the privity requirements of warranty law and <u>expanding</u> the tort liability for manufacturers of defective products which cause personal injury [by adopting strict products liability], we expressly limited tort liability with respect to defective products to

injury caused to persons or damage caused to property other than the defective product itself."). This is because the rule itself acts merely as a specific articulation of the proper approach for those products liability cases in which contract principles, rather than tort principles, are best suited for resolving the claim. See Fla. Power & Light Co. v. Westinghouse Elec. Corp., 510 So. 2d 899, 901-02 (Fla. 1987) (citing with approval several district courts of appeal cases holding that strict liability applies only where the plaintiff has suffered personal injury or damage to other property and explaining that "contract principles [are] more appropriate than tort principles for resolving economic loss without an accompanying physical injury or property damage").

The majority's conclusion that the economic loss rule is limited to the products liability context does not undermine Florida's contract law or provide for an expansion in viable tort claims. Basic common law principles already restrict the remedies available to parties who have specifically negotiated for those remedies, and, contrary to the assertions raised in dissent, our clarification of the economic loss rule's applicability does nothing to alter these common law concepts. For example, in order to bring a valid tort claim, a party still must demonstrate that all of the required elements for the cause of action are satisfied, including that the tort is independent of any breach of contract claim. See Lewis v. Guthartz, 428 So. 2d 222, 224 (Fla. 1982) (holding that there must be a tort

"distinguishable from or independent of [the] breach of contract" in order for a party to bring a valid claim in tort based on a breach in a contractual relationship); Elec. Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co., 482 So. 2d 518, 519 (Fla. 3d DCA 1986) ("[A] breach of contract, alone, cannot constitute a cause of action in tort . . . . It is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such breach can constitute negligence." (citations omitted)).

While the contractual privity form of the economic loss rule has provided a simple way to dismiss tort claims interconnected with breach of contract claims, it is neither a necessary nor a principled mechanism for doing so. Rather, these claims should be considered and dismissed as appropriate based on basic contractual principles—a proposition we reaffirmed in American Aviation, where we stated that "when the parties have negotiated remedies for nonperformance pursuant to a contract, one party may not seek to obtain a better bargain than it made by turning a breach of contract into a tort for economic loss." Am. Aviation, 891 So. 2d at 542. The majority's decision does not change this statement of law, but merely explains that it is common law principles of contract, rather than the economic loss rule, that produce this result.

The economic loss rule is not a long-standing common law rule that has always existed in our jurisprudence to define the parameters of cognizable contract

and tort causes of action, but is instead a doctrine that arose in the torts context to serve a specific purpose—to curb potentially unbounded liability following the adoption of strict products liability. Indeed, we explicitly noted in American Aviation that "[t]he economic loss rule adopted in Florida Power represents this Court's pronouncement that, notwithstanding the theory of strict liability adopted in West[v. Caterpillar Tractor Co., 336 So. 2d 80, 92 (Fla. 1976)], strict liability has not replaced warranty law as the remedy for frustrated economic expectations in the sale of goods." Am. Aviation, 891 So. 2d at 541. Accordingly, I believe that limiting the rule to the specific context from which it developed is principled because it prevents unnecessary complexity in the law and restricts the rule's application to its "genuine, but limited, value in our damages law." Id. at 542 (quoting Moransais, 744 So. 2d at 983). In other words, as we first recognized in Moransais, "fundamental contractual principles" already properly delineate the general boundary between contract law and tort law. Moransais, 744 So. 2d at 981. Application of the economic loss rule to serve this function outside the products liability context simply allows for the possibility of confusion, overuse, and the restriction of well-established common law remedies.

Indeed, this is exactly what has happened since we first adopted the economic loss rule in Florida. Over time, the rule has been inadvertently extended to cover situations outside the context of products liability. See id. at 980

("Unfortunately, however, our subsequent holdings have appeared to expand the application of the rule beyond its principled origins and have contributed to applications of the rule by trial and appellate courts to situations well beyond our original intent."). Not only has this proved unworkable, as the majority aptly notes, but it is outside the original intent of the rule and, indeed, of our prior decisions. In my view, Justice Canady's assertion in dissent that the majority's conclusion "repudiates our case law," dissenting op. at 28 (Canady, J.), is not borne out by a close examination of the history of our economic loss rule cases.

We have repeatedly explained that the expansion of the economic loss rule beyond products liability to cover situations in which the parties are in privity of contract is best illustrated by AFM Corp. v. Southern Bell Telephone & Telegraph Co., 515 So. 2d 180, 181 (Fla. 1987), where the Court held that there was "no basis for recovery in negligence" since the plaintiff could not prove that "a tort independent of the breach [of contract] itself was committed." The Court subsequently indicated, however, that its decision in AFM "may have been unnecessarily over-expansive" in its "reliance on the economic loss rule as opposed to fundamental contractual principles." Moransais, 744 So. 2d at 981. In 2004, we receded from AFM "to the extent that it relied on the principles adopted by this Court in Florida Power." Am. Aviation, 891 So. 2d at 542. Therefore, since we essentially receded in American Aviation from this overexpansion of the

rule, we need not specifically overrule any case today in order to explicitly clarify that the economic loss rule applies only to products liability cases.

Justice Canady points most recently to Curd v. Mosaic Fertilizer, LLC, 39 So. 3d 1216 (Fla. 2010), and American Aviation, as indicating that the contractual privity application of the economic loss rule is settled Florida law. While those two cases did list this application of the rule in reviewing its history, the contractual privity use of the economic loss rule was not at issue in either of those cases. See Curd, 39 So. 3d at 1223; Am. Aviation, 891 So. 2d at 541. Curd simply restated general language from American Aviation, and American Aviation used AFM, from which it later partially receded, to illustrate how the contractual privity form of the rule has been applied.

In the aftermath of American Aviation, which clearly stated an intent to "expressly limit[]" the economic loss rule, American Aviation, 891 So. 2d at 542, it was no longer clear whether our decisions permitted application of the rule to situations involving contractual privity. We now eliminate once and for all any confusion in the application of the economic loss rule remaining since Moransais and clearly espouse Justice Wells' view that "the economic loss rule should be limited to cases involving a product which damages itself by reason of a defect in the product." Moransais, 744 So. 2d at 984 (Wells, J., concurring). Far from upsetting firmly established principles, therefore, our decision resolves any

ambiguity remaining from this line of cases and restores the economic loss rule to its principled roots. I concur fully in the majority's well-reasoned decision.

LEWIS and LABARGA, JJ., concur.

POLSTON, C.J., dissenting.

The Eleventh Circuit certified the following question:

> Does an insurance broker provide a "professional service" such that the insurance broker is unable to successfully assert the economic loss rule as a bar to tort claims seeking economic damages that arise from the contractual relationship between the insurance broker and the insured?

No. This Court's controlling precedent clearly answers the certified question in the negative. But without justification, the majority greatly expands the use of tort law at a cost to Florida's contract law. Now, there are tort claims and remedies available to contracting parties in addition to the contractual remedies which, because of the economic loss rule, were previously the only remedies available.[10]

---

10. The following examples illustrate the type of cases that are now overruled by the majority's opinion and will make available a wide arsenal of tort claims previously barred by the economic loss rule. See, e.g., Geico Cas. Co. v. Arce, 333 Fed. Appx. 396, 398 (11th Cir. 2009) (applying Florida law and barring civil conspiracy claim alleging failure to abide by contractual duty to defend); Mount Sinai Med. Ctr. of Greater Miami, Inc. v. Heidrick & Struggles, Inc., 188 Fed. Appx. 966, 969 (11th Cir. 2006) (applying Florida law and barring fraudulent misrepresentation claims alleging failure to provide correct information under the terms of a CEO search contract); Royal Surplus Lines Ins. Co. v. Coachman Indus., 184 Fed. Appx. 894, 902 (11th Cir. 2006) (applying Florida law and barring insurer's tort actions alleging insured's failure to provide information under the

- 26 -

As noted in <u>Indemnity Insurance Co. of North America v. American Aviation, Inc.</u>, 891 So. 2d 532, 537 (Fla. 2004), tort claims involving professional services are not barred by the economic loss rule. But this Court in <u>Pierce v. AALL Insurance Inc.</u>, 531 So. 2d 84 (Fla. 1988), held that insurance agents are not considered "professional" for purposes of the professional malpractice statute of limitations. <u>Pierce</u>'s rationale concerning insurance agents applies with equal force to insurance brokers and requires the response to the Eleventh Circuit that insurance brokers do not provide professional services that would bar a defense under the economic loss rule.[11] That response is equally dictated by this Court's

_____

terms of a cooperation clause); <u>Cessna Aircraft Co. v. Avior Techs., Inc.</u>, 990 So. 2d 532, 538 (Fla. 3d DCA 2008) (barring negligence claim against aircraft repair company for failed contracted-for repairs to aircraft); <u>Taylor v. Maness</u>, 941 So. 2d 559, 564 (Fla. 3d DCA 2006) (barring cause of action alleging fraudulent failure to perform under the contract and sell real property to plaintiffs); <u>Straub Capital Corp. v. L. Frank Chopin, P.A.</u>, 724 So. 2d 577, 579 (Fla. 4th DCA 1998) (barring action alleging negligent misrepresentation by a landlord after he failed to timely build and provide space to tenants under the terms of their contract); <u>Smith v. Bd. of Regents ex rel. Florida A&M Univ.</u>, 701 So. 2d 348, 349 (Fla. 1st DCA 1997) (barring cause of action brought by university professor alleging negligence by the Board of Regents and his bank in potentially breaching their duties under employment and deposit contracts); <u>Hotels of Key Largo v. RHI Hotels</u>, 694 So. 2d 74, 77 (Fla. 3d DCA 1997) (barring action alleging fraudulent failure to adequately provide increased reservations and hotel management services under the contract).

11. The services of Marsh & McLennan Companies certainly appear professional to me under the rationale given by Justice McDonald in his dissenting opinion in <u>Pierce</u>: "If the act is one which involves giving advice, using superior knowledge and training of a technical nature, or imparting instruction and recommendations in the learned arts then the act is one of a professional." 531 So.

decision in <u>Garden v. Frier</u>, 602 So. 2d 1273, 1275 (Fla. 1992), when we further reduced the definition of a "professional" under the professional malpractice statute to those "vocation[s] requiring at a minimum a four-year college degree before licensing is possible in Florida." It is undisputed by the parties that a four-year college degree is not necessary to become licensed as an insurance broker.

Instead of simply answering the certified question that our cases clearly control, the majority obliterates the use of the doctrine when the parties are in contractual privity, greatly expanding tort claims and remedies available without deference to contract claims. Florida's contract law is seriously undermined by this decision.

Accordingly, I respectfully dissent.

CANADY, J., concurs.

CANADY, J., dissenting.

For many years, this Court has recognized the vital role of the economic loss rule in maintaining the boundary between tort law and contract law. With today's decision, the majority repudiates our case law and sets a new course for the expansion of tort law at the expense of contract law. I agree with Chief Justice

---

2d at 88 (McDonald, J., dissenting) (quoting <u>Pierce</u>, 513 So. 2d at 161). But this definition was expressly rejected by the Court in <u>Pierce</u>.

Polston's view that "Florida's contract law is seriously undermined by this decision," dissenting op. at 28 (Polston, C.J.), and I accordingly dissent.

Just two years ago, in Curd v. Mosaic Fertilizer, LLC, 39 So. 3d 1216, 1223 (Fla. 2010), the same majority that decides today's case joined in an opinion stating the general principle that "the economic loss rule in Florida is applicable" not only in the products liability context but also "where the parties are in contractual privity and one party seeks to recover damages in tort for matters arising out of the contract." The majority in Curd simply restated Florida law.

In Indemnity Insurance Co. of North America v. American Aviation, Inc., 891 So. 2d 532, 536 (Fla. 2004), we explained that the general "prohibition against tort actions to recover solely economic damages for those in contractual privity is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." We recognized the rationale for the economic loss rule:

> Underlying this rule is the assumption that the parties to a contract have allocated the economic risks of nonperformance through the bargaining process. A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. Thus, when the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement. Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract.

<u>Id.</u> at 536-37.

The holding in <u>American Aviation</u> was based on the negative answer to this Court's rephrased certified question: "Whether the economic loss doctrine bars a negligence action to recover purely economic loss in a case where the defendant is neither a manufacturer nor distributor of a product and there is <u>no privity of contract</u>." <u>Id.</u> at 534 (emphasis added). By rephrasing the certified question in this manner, this Court emphasized the significance of the existence of privity of contract in determining whether the economic loss rule should be applied to bar a negligence action. This Court held as follows: "Because the defendant in this case is neither a manufacturer nor distributor of a product, and the parties <u>are not in privity of contract</u>, this negligence action is not barred by the economic loss rule." <u>Id.</u> (emphasis added).

Both <u>Curd</u> and <u>American Aviation</u> merely rearticulated the point we had made earlier in <u>Casa Clara Condominium Ass'n, Inc., v. Charley Toppino & Sons, Inc.</u>, 620 So. 2d 1244, 1246 (Fla. 1993), concerning the boundary between tort law and contract law:

> [E]conomic losses are disappointed economic expectations, which are protected by contract law, rather than tort law. This is the basic difference between contract law, which protects expectations, and tort law, which is determined by the duty owed to an injured party. For recovery in tort there must be a showing of harm above and beyond disappointed expectations. A buyer's desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects.

(Citations omitted) (internal quotation marks omitted). And <u>Casa Clara</u> itself echoed the reasoning of <u>Florida Power & Light Co. v. Westinghouse Electric Corp.</u>, 510 So. 2d 899 (Fla. 1987), that "contract principles [are] more appropriate than tort principles for [resolving] economic loss without an accompanying physical injury or property damage." <u>Casa Clara</u>, 620 So. 2d at 1247 (quoting <u>Florida Power</u>, 510 So. 2d at 902).

In <u>Florida Power</u>, 510 So. 2d at 902, we rejected the invitation—in the products liability context—"to intrude into the parties' allocation of risk by imposing a tort duty and corresponding cost burden on the public." In <u>AFM Corp. v. Southern Bell Telephone & Telegraph Co.</u>, 515 So. 2d 180, 180 (Fla. 1987), we then applied the reasoning of <u>Florida Power</u> to bar a claim for economic losses in tort by a purchaser of services where there was no claim for personal injury or property damage.

Our cases thus have repeatedly recognized the economic loss rule as a rule that prevents contract law from "drown[ing] in a sea of tort." <u>Casa Clara</u>, 620 So. 2d at 1247 (quoting <u>East River S.S. Corp. v. Transamerica Delaval, Inc.</u>, 476 U.S. 858, 866 (1986)).[12] The basis for this rationale—which the Court has repeatedly

---

12. The Restatement (Third) of Torts: Liability for Economic Harm (Tentative Draft No. 1) § 3 (April 4, 2012) states the general rule that "there is no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between the parties." The comments explaining this rule observe that "[i]f two parties have a contract, the argument for limiting tort claims

- 31 -

elaborated—is not limited to the products liability context. The application of the economic loss rule in the context of other relationships based on contract is not "unprincipled." Majority op. at 16-18. The goal of preventing contract law from drowning in a sea of tort is as compelling in the broader context of contract-based relationships as it is in the product liability context. The majority articulates no explanation of why the economic loss rule is appropriately applied in the products liability context but is unworkable or unwise in that broader context.

The best the majority offers is some turgid and obscure dicta from Moransais v. Heathman, 744 So. 2d 973 (Fla. 1999), and criticism of the exceptions from the economic loss rule recognized in our case law. The fact that the economic loss rule is subject to certain recognized exceptions—exceptions that are based on specific policy considerations—does not undermine the integrity of the general rule or obliterate the purpose on which it is based. On the contrary, the

---

between them is most powerful." Id. at cmt. a. The comments explain the rationale for the rule:

> When a dispute arises, the rule protects the bargain the parties have made against disruption by a tort suit. Seen from an earlier point in the life of a transaction, the rule allows parties to make dependable allocations of financial risk without fear that tort law will be used to undo them later. Viewed in the long run, the rule prevents the erosion of contract doctrines by the use of tort law to work around them. The rule also reduces the confusion that can result when a party brings suit on the same facts under contract and tort theories that are largely redundant in practical effect.

Id. at cmt. b.

- 32 -

exceptions are predicated on the validity of the general rule. In short, the majority has failed to justify this dramatic unsettling of Florida law.

The concurring opinion likewise fails to provide any reasoning to support the limitation on the scope of the economic loss rule imposed by today's decision. Totally absent from the concurrence is any discussion of how the rationale we have articulated for the economic loss rule can be reconciled with limiting the operation of the rule to products liability cases. Like the majority opinion, the concurring opinion effectively dismisses the reasoning in this Court's prior decisions as irrelevant.

The concurrence correctly recognizes that a minority of this Court has previously expressed the view concerning the limited scope of the economic loss rule that is today adopted by the Court. But a minority of the Court does not articulate the law of Florida. Nothing in those prior minority views provides a principled basis for rejecting the general application of the rationale articulated in our prior decisions.

The concurrence also relies on this Court's statements in American Aviation concerning our holding in AFM. But the concurrence's reliance on American Aviation to support departing from our precedent in AFM is unwarranted. I readily concede that confusion arose from this Court's declaration that it was receding from AFM "to the extent that it relied on the principles adopted" in

<u>Westinghouse Electric</u>. <u>Am. Aviation</u>, 891 So. 2d at 542. This statement is problematic for two salient reasons.

First, and most important, <u>American Aviation</u> itself predicated its holding and its formulation of the rephrased certified question on the significance of the existence of privity of contract. At the outset of the opinion, this Court stated: "We conclude that the 'economic loss doctrine' . . . bars a negligence action to recover solely economic damages only in circumstances where the parties are either in <u>contractual privity</u> or the defendant is a manufacturer or distributor of a product, and no established exception to the application of the rule applies." 891 So. 2d at 534 (emphasis added). To the extent that the subsequent statement concerning <u>AFM</u> is understood to suggest a repudiation of the "contractual privity economic loss rule," 891 So. 2d at 537, the majority's opinion in <u>American Aviation</u> is self-repudiating and irredeemably incoherent.

Second, as the concurrence correctly observes, the facts in <u>American Aviation</u> did not involve a contractual relationship between the parties. Accordingly, <u>American Aviation</u> did not present a proper occasion for the Court to repudiate a prior holding, such as <u>AFM</u>, that specifically addressed the application of the economic loss rule to facts based on the existence of a contractual relationship. If the statement in <u>American Aviation</u> concerning <u>AFM</u> is anything, it is dicta.

With today's decision, we face the prospect of every breach of contract claim being accompanied by a tort claim. I strongly dissent from this decision. Based on the precedents explained in Chief Justice Polston's dissent, I would conclude that an insurance broker does not provide a professional service and thus is not precluded from asserting the economic loss rule as a bar to tort claims. I therefore would answer the certified question in the negative.

POLSTON, C.J., concurs.

Certified Question of Law from the United States Court of Appeals for the Eleventh Circuit - Case No. 09-11718-GG

Mark L. McAlpine of McAlpine & Associates, P.C., Auburn Hills, Michigan,

    for Appellant

Mitchell J. Auslander and Christopher J. St. Jeanos of Willkie, Farr & Gallagher, LLP, New York, New York,

    for Appellees